**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

JOSE ARMANDO ALDANA GARCIA,
Petitioner,
v.
SAMUEL OLSON, et al.,
Respondents.

Case No. 26-cv-7252

Judge John Robert Blakey

## ORDER

Because Petitioner's mandatory detention without a custody redetermination hearing pending removal proceedings is contrary to the law, this Court grants his petition for a writ of habeas corpus, [1], and expects that, within a reasonable time, Respondents shall, consistent with this order, either: (1) effect removal proceedings consistent with the INA and its implementing regulations; (2) provide Petitioner with a custody redetermination hearing under 8 U.S.C. § 1226(a); or (3) otherwise release Petitioner from custody (under reasonable conditions of supervision). If Respondents fail to do one of these three options within five days of this order, then they must, within seven days of this order, file a report with supporting materials showing cause why this Court should not exercise its equitable authority and order Petitioner's immediate release from custody, pending removal proceedings. This Court sets this matter for a status hearing on September 9, 2026, at 11:00 a.m. in Courtroom 1203.

## STATEMENT

### A. Background & Procedural History

On January 29, 2023, Jose Armando Aldana Garcia, a native and citizen of Venezuela, applied for admission to enter the United States at the port of entry near San Ysidro, California. [9] at 2. U.S. Customs and Border Protection officials briefly detained him, then issued a Notice to Appear (NTA) for removal proceedings and paroled him into the United Statues pursuant to 8 U.S.C. §1182(d)(5)(A). An Immigration Judge later determined that the factual allegations contained in the NTA remained deficient and thus dismissed proceedings without prejudice. *Id.*

Nevertheless, on June 21, 2026, Immigration and Customs Enforcement (ICE) officers arrested and detained Petitioner pursuant to a warrant; at that time, ICE served Petitioner with a new NTA ordering Petitioner to appear on July 6, 2026 and

a letter terminating his parole.[1] Before arresting Petitioner, ICE gave no notice of any parole revocation; nor did Respondents make any individualized determination regarding whether the conditions of his release had been violated or whether there was a changed circumstance warranting his re-detention. After arresting Petitioner, ICE agents brought him to ICE's processing Center in Broadview, Illinois; ICE then relocated Petitioner to the Clay County Detention Center, in Brazil, Indiana. Based upon the record, it appears Petitioner has remained in detention since his initial arrest, without a bond hearing.

On June 21, 2026, the day of his arrest, Garcia filed a habeas corpus petition, [1], alleging that his re-detention without notice or an opportunity to be heard violates the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process Clause, *see* [1], [10]. In their answer to the petition, Respondents claim Petitioner remains subject to mandatory detention pending removal, pursuant to 8 U.S.C. §1225(b), *see* [9].

## B. Legal Authority & Discussion

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241. The individual in custody bears the burden of proving that his detention is unlawful. *See, e.g., Walker v. Johnston*, 312 U.S. 275, 286 (1941). Here, the Petitioner claims that his mandatory detention (without a custody redetermination by the immigration judge) violates both the INA and the due process clause of the Fifth Amendment.

As to the INA, the parties invoke two different statutory provisions relating to detention. Petitioner contends that this case falls within 8 U.S.C. § 1226(a) and thus Petitioner remains entitled to a bond hearing; while Respondents claim that, because Petitioner arrived through a port of entry and was paroled into the United States, this case is governed by § 1225(b), and thus, Petitioner remains subject to mandatory detention.

Courts in this Circuit have consistently held that noncitizens already in the country are properly detained pursuant to § 1226(a), rather than § 1225(b)(2)(A), and are thus entitled to a bond hearing. *See, e.g., Cirrus Rojas v. Olson*, No. 25-3127, 2026 WL 2198315, at *2 (7th Cir. July 30, 2026)("Aliens present in the country without admission and not 'seeking admission' fall under Section 1226, not Section 1225(b)(2)(A), and are eligible for bond hearings subject to the INA's other requirements."); *see also Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (holding that, "based upon the text and structure" of the two statutory provisions, the "better argument" is that "ICE's authority to detain a

---

[1] Based upon the new NTA, Petitioner was scheduled to appear before an Immigration Judge on July 6, 2026, but it appears that hearing has been rescheduled to September 2, 2026.

noncitizen discovered within the country derives from § 1226(a) and not from § 1225(b)"). The question presented in this case is whether a different outcome should obtain because Petitioner arrived here via a port of entry and was granted humanitarian parole pursuant to 8 U.S.C. §1182(d)(5)(A).[2]

In *Castillo v. Olson*, *et al.*, No. 26 CV 6843, 2026 WL 1894096 (N.D. Ill. July 1, 2026), Judge Jenkins considered the same question under remarkably similar facts and found that such circumstances do not alter the §§ 1225/1226 analysis. Castillo, like Petitioner here, had been "playing by the rules" for years—he entered the United States without inspection in 2022, was granted humanitarian parole under § 1182(d)(5), applied for asylum, and had no criminal record; yet he was scooped up by ICE while attending a routine check in. *Id.* at *1, *8. At the time of his arrest, ICE served Castillo with a letter terminating his parole and a Notice to Appear; he filed a habeas petition under § 2241; Respondents argued that he remained subject to mandatory detention under § 1225; and Judge Jenkins rejected the argument, holding, based upon statutory interpretation, "sound sense," and the circumstances of the case, that Castillo remained subject to §1226, not §1225. In determining that treating noncitizens detained upon revocation of humanitarian parole the same as other noncitizens already present in the United States made sense, Judge Jenkins observed:

> Like other noncitizens who have spent years in the United States, parolees residing in the country for years have begun to establish roots. Indeed, noncitizens on humanitarian parole are authorized by statute to establish those roots—they can apply for a change in status, obtain a work permit, and receive federal public benefits. It would defy common sense to allow noncitizens unlawfully present in the United States (who cannot take advantage of these lawful avenues for assimilating into the country) release on bail pending removal proceedings while denying that same relief to noncitizens who, up until their parole revocation, were lawfully present in the United States.

*Id*. at * 7. Such reasoning applies with equal force here.

In ruling as she did, Judge Jenkins found it significant that DHS behaved as if it knew Castillo fell within § 1226, as DHS arrested Castillo pursuant to a warrant,

---

[2] The INA provision regarding humanitarian parole provides that the Secretary of Homeland Security may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States. 8 U.S.C. § 1182(d)(5)(A).

which is required under § 1226, but not under § 1225. *Id.* The same is true here, *see* [8] at 3 (representing that ICE arrested Garcia "with a warrant"). Judge Jenkins also found it significant that Castillo's notice to appear checked the box indicating that he was "an alien present in the United States who has not been admitted or paroled," and left unchecked the box indicating that he was "an arriving alien." *Castillo*, 2026 WL 1894096, at *7. This is also true in Garcia's case: the June 21, 2026 NTA checks the box indicating that Garcia is "an alien present in the United States who has not been admitted or paroled" and does not check the box indicating that he is "an arriving alien." [9-1] at 1.

Under these circumstances, the Court agrees with Judge Jenkins that treating noncitizens detained upon revocation of humanitarian parole the same as other noncitizens already present in the United States makes sense, particularly where DHS failed, pre-arrest, to evidence any determination concerning the reasons for the termination of such humanitarian parole and given the 2023 determination by the Immigration Judge who dismissed proceedings as to Garcia based upon a deficient factual predicate.[3] Given DHS' conduct in 2023 and DHS and ICE's conduct in 2026, the Court finds that Petitioner Garcia falls within § 1226, not §1225. As the Seventh Circuit recently observed, for nearly thirty years, "five presidential administrations—including the first administration of President Donald J. Trump—have applied Section 1225(b)(2)(A) to aliens 'at the Nation's borders and ports of entry' and Section 1226(a) to aliens 'inside the United States.'" *Cirrus Rojas v. Olson*, No. 25-3127, 2026 WL 2198315, at *5 (7th Cir. July 30, 2026) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 287–88 (2018); *Barbosa da Cunha v. Freden*, 175 F.4th 61, 91 (2d Cir. 2026), petition for cert. filed, No. 26-104 (U.S. July 24, 2026)). Consistent with *Jennings v. Rodriguez*, 583 U.S. 281 (2018), noncitizens already in the country are properly detained pursuant to § 1226, rather than § 1225, and are thus entitled to a bond hearing. *See Cirrus Rojas,* 2026 WL 2198315, at *2 ("Aliens present in the country without admission and not 'seeking admission' fall under Section 1226, not Section 1225(b)(2)(A), and are eligible for bond hearings subject to the INA's other requirements."). Petitioner thus qualifies for discretionary detention, and subjecting Petitioner to mandatory detention under § 1225(b) remains contrary to the INA. This is so for Petitioner, even though he initially entered this country through a port of entry. Indeed, the undisputed portions of the record provide no evidence to suggest that Petitioner was "seeking entry" into the United States when immigration officers encountered and detained him.[4]

[3] At the hearing on July 22, 2026, this Court asked the parties to address *Castillo* and another recent case in this district, *Estebesov v. Olson*, No. 26-CV-1165, 2026 WL 1229622 (N.D. Ill. May 5, 2026), which addressed the same issue under different circumstances. When the parties indicated that they remained unfamiliar with these cases, the Court granted them leave to file supplemental materials concerning these matters if they wished to do so. The parties declined to take advantage of this opportunity.

[4] On the contrary, Respondents concede that Petition entered the United States in 2023, and do not dispute that Petitioner has been lawfully residing in Chicago since that time. Given such facts (and

Although Respondents rely upon *Dep't of Homeland Sec. v. Thuraissigiam,* the case does not compel a different result. Thuraissigiam crossed the border without inspection or an entry document and made it 25 yards into American territory before being arrested and detained for expedited removal. 591 U.S. 103, 114 (2020). After his asylum claim was rejected, he filed a habeas petition challenging his removal; he did not seek release from custody but sought instead an additional opportunity to present his asylum claim. *Id.* at 107. Mr. Garcia's case thus differs in significant respects: Mr. Garcia entered the country through a port of entry, rather than sneaking across the border, he has resided lawfully in this country for years and played by the rules Respondents set, and he seeks the very type of relief a habeas petition is designed to afford. Nothing in *Thuraissigiami* undermines the notion that § 1226(a) applies to a noncitizen under these circumstances.

## C. Conclusion

Because Petitioner's mandatory detention without a custody redetermination hearing pending removal proceedings is contrary to the law as set forth above, this Court grants the petition for a writ of habeas corpus [1], and expects that, within a reasonable time, Respondents shall, consistent with this order, either: (1) effect removal proceedings consistent with the INA and its implementing regulations; (2) provide Petitioner with a custody redetermination hearing under 8 U.S.C. § 1226(a); or (3) otherwise release Petitioner from custody (under reasonable conditions of supervision). If Respondents fail to do one of these three options <u>with five days of this order</u>, then they must, <u>within seven days of this order</u>, file a report with supporting materials showing cause why this Court should not exercise its equitable authority and order Petitioner's immediate release from custody, pending removal proceedings.

Dated: August 26, 2026

Entered:

John Robert Blakey
United States District Judge

---

having determined that Petitioner's mandatory detention without a custody redetermination pending removal remains unlawful under the INA), this Court need not consider whether his detention also runs contrary to the due process clause. 28 U.S.C. § 2241 (a district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution *or* laws . . . of the United States.") (emphasis added).